United States District Court
Southern District of Indiana
Indianapolis Division

| | |
|---|---|
| JULIA ZEIGLER and DONALD ROOF, Individually, and on behalf of all others similarly situated,<br><br>    *Plaintiffs*,<br><br>v.<br><br>SOUTHEASTERN INDIANA HEALTH MANAGEMENT INC. D/B/A COLUMBUS REGIONAL HEALTH,<br><br>    *Defendant*. | Cause No. 1:23-cv-1385<br><br>[Removal from Marion County Superior Court, Indiana, no. 49D01-2307-MI-027184] |

## Notice of Removal

In this putative class action, Julia Zeigler and Donald Roof claim Southeastern Indiana Health Management Inc. d/b/a Columbus Regional Health[1] ("the Hospital") utilizes Facebook software and source code on its general public website. They allege, in turn, that the Hospital violated federal industry standards promulgated by the Federal Trade Commission (FTC), the Health Insurance Portability and Accountability Act of 1996, 42 U.S.C. § 1320d *et seq.* (HIPAA), HIPAA regulations, and HHS guidance by collecting data about patient interactions with its online platforms. Among the Plaintiffs' core defined terms are "Personally Identifying Information"; and "Protected Health Information" (both terms of art from the FTC, HIPAA regulations, and HHS guidance documents).

---

[1] Columbus Regional Hospital has been incorrectly named as "Southeastern Indiana Health Management, Inc. d/b/a Columbus Regional Health" by Plaintiffs.

These alleged violations of federal decrees form the foundation of Plaintiffs' state law claims. Essential to Plaintiffs' claims will be the Court's determination of:

- Federal preemption of state laws;
- The substance of federal laws, federal regulations, and federal agency directives;
- Analysis of whether any act violated HIPAA or other federal laws; and
- The interplay between federal and state regulation.

Demonstrating the nationwide character of the alleged underlying conduct, cases of a similar character are pending across the nation. *See, e.g., Kurowski et al. v. Rush System For Health*, No. 22 C 5380 (N.D. Ill. Mar. 2, 2023); *Hartley v. University Of Chicago Medical Center et al.*, Case No. 1:22cv5891 (N.D. Ill); *In Re Advocate Aurora Health Pixel Litigation*, Case No. 2:22cv1253 (E.D. Wis); *Doe v. Meta Platforms, Inc.*, No. 22-cv-03580-WHO (N.D. Cal. Dec. 21, 2022); *Yeisley v. University Of Iowa Hospitals & Clinics*, No. 3:23-cv-25 (S.D. Iowa); *Doe I et al. v.. Google LLC*, Case No. 5:23-cv-2431 (N.D. Cal).

Indeed, Plaintiffs' case is substantively identical to one that the Hospital has already removed to this Court under cause number 1:23-cv-01117. The cases are so similar, they even use the same adjectives to gild their allegations. *Compare* DE #1-2 ¶ 1 ("Plaintiffs bring this case to address Defendant's outrageous, illegal, and widespread practice ...") *with* Compl., *Elkins v. Southeastern Ind. Health Management Inc.*, No. 1:23-cv-01117, ECF No. 1-2 ¶ 1 ("Plaintiffs bring this class action to address Defendant's outrageous, illegal, and widespread practice …) (S.D. Ind., June 26, 2023). One major difference is that Plaintiffs here concede that this is a nationwide issue, by seeking a nationwide class. *See* DE #1-2 ¶ 139. Given the extreme overlap of legal issues and factual allegations, the Hospital

will contemporaneously seek to consolidate this matter with the *Elkins* matter pursuant to Federal Rule of Civil Procedure 42(a).

The Hospital hereby removes this action from the Marion Superior Court to the United States District Court for the Southern District of Indiana, with full reservations of all defenses, pursuant to 28 U.S.C. §§ 1331, 1367, 1441, 1442 and 1446. In support, the Hospital provides this "short and plain statement of the grounds for removal." 28 U.S.C. § 1446(a); *see also Dart Cherokee Basis Operating Co., LLC v. Owens*, 574 U.S. 81, 87 (2014) ("By design, § 1446(a) tracks the general pleading requirement stated in Rule 8(a) of the Federal Rules of Civil Procedure.").

## Nature of Removed Action

1. On July 11, 2023, Plaintiffs filed an action in Marion County Superior Court, under cause number 49D01-2307-MI-027184.

2. Plaintiffs allege that the Hospital discloses Personally Identifying Information ("PII") or Protected Health Information ("PHI") to third parties, including Facebook. Compl. ¶ 1. Plaintiffs claim that the Hospital has violated requirements of the federal HIPAA statute, and rules established by the federal Department of Health and Human Services ("HHS"). *Id.* ¶¶ 3; 101–114. Plaintiffs cite and rely on guidance documents from HHS, *id.* ¶ 102, federal instruction on de-identification of PHI, *id.* ¶ 103, federal guidance regarding marketing, *id.* ¶ 104; and a Bulletin issued by the HHS's Office for Civil Rights, *id.* ¶ 105.

3. Plaintiffs served the Hospital with their Complaint at the earliest on July 20, 2023. The Hospital has not answered the Complaint in state court. Pursuant to 28 U.S.C. § 1446(b), the Hospital has 30 days from the receipt of the Summons and Complaint to seek removal to this Court. *See Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 354–56 (1999) (30-day removal period begins to

run upon service of summons and complaint). Accordingly, this Notice of Removal is timely filed.

4. Pursuant to 28 U.S.C. § 1446(a) and Southern District of Indiana Local Civil Rule 81-2, a copy of the operative Complaint is attached hereto as Exhibit 2. A copy of the State Court Record consisting of the state-court docket and all filings in state court is attached hereto as Exhibit 1.

## Venue and Jurisdiction

5. Venue is proper in this Court pursuant to 28 U.S.C. §§ 116, 1391, 1441(a), and 1446(a) because the Superior Court of Marion County, Indiana, where the Complaint was filed, is a state court within the Southern District of Indiana.

6. This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331, 1367, 1441, 1442 and 1446.

## Basis for Removal

7. Removal is proper under 28 U.S.C. §§ 1441(a) (federal officer removal) and 1331 (federal question removal).

**1. Removal is proper pursuant to 28 U.S.C. § 1442(a), federal officer removal.**

8. Pursuant to 28 U.S.C. § 1442(a), removal is permitted when the defendant is "the United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency therefore, in an official or individual capacity, for or relating to any act under color of such office …" 28 U.S.C. § 1442(a)(1).

9. This provision, however, extends beyond officers on the payrolls of the federal government; the "statute allows defendants to remove suits for certain actions that they took while acting under federal officers." *Ruppel v. CBS Corp.*, 701 F.3d 1176, 1179 (7th Cir. 2012). The federal officer removal statute is to be broadly construed, and removal should be permitted when defendants are acting

under color of federal office. *Colorado v. Symes*, 286 U.S. 510, 517 (1932); *Arizona v. Manypenny*, 451 U.S. 232, 242 (1981). The statute evinces concern that "unfriendly" states will impose state-law liability on federal officers and their agents for actions "done under the immediate direction of the national government." *Tennessee v. Davis*, 100 U.S. 257, 263 (1879). The statute "represents an exception to the well-pleaded complaint rule, which would ordinarily defeat jurisdiction when the federal question arises outside of the Plaintiffs' complaint." *Ruppel*, 701 F.3d at 1180.

10. Notably, several district courts faced with this exact federal officer argument have found removal appropriate, and have denied motions to remand. *See Doe I v. UPMC*, 2020 WL 4381675, at *7 (W.D. Pa. July 31, 2020) ("UPMC has shown that by its participation in the Meaningful Use Program, it was 'acting under' DHHS when it engaged in the conduct that is at issue in the Complaint. Furthermore, the complained-of conduct is 'for or relating to' an act under color of office, and UPMC has raised several colorable federal defenses"); *Doe v. ProMedica Health Sys., Inc.*, 2020 WL 7705627, at *2 (N.D. Ohio Oct. 30, 2020) ("Here, Defendant alleges they created the electronic-health-record patient portal primarily to assist the federal government in its mission for a nationwide system of electronic health records. In return, Defendant took advantage of federal incentives for setting up such a program").

11. In short, removal is appropriate for "defendants working hand-in-hand with the federal government to achieve a task that furthers an end of the federal government," *Ruppel*, 701 F.3d at 1181, as the Hospital is here.

### 1.1. Background on the Meaningful Use Program

12. In 2004, President Bush, by executive order, established the National Health Information Technology Coordinator ("ONC") to incentivize "nationwide

implementation of interoperable health information technology in both the public and private health care sectors." See Exec. Order 13335 (Apr. 27, 2004), available at https://www.govinfo.gov/content/pkg/WCPD-2004-05-03/pdf/WCPD-2004-05-03-Pg702.pdf.

13. Congress then codified the ONC in the Health Information Technology for Economic and Clinical Health Act of 2009 ("HITECH Act"). See 123 Stat. 115, 247 (2009) (codified at 42 U.S.C. § 300jj-31). As a result, Congress allocated billions of dollars to the Centers for Medicare & Medicaid Services ("CMS") to "invest in the infrastructure necessary to allow for and promote the electronic exchange and use of health information for each individual in the United States consistent with the goals outlined in the strategic plan developed by the [ONC]." Id.

14. Furthermore, private providers receive guidance from the ONC, including five-year strategic plans. For example, in the 2015–2020 plan, ONC dictated that "federal agencies" were to "collaborate with . . . private stakeholders to . . . build a culture of electronic health information access and use." ONC, Federal Health Information Technology Strategic Plan 2015-2020, available at https://www.healthit.gov/sites/default/files/9-5-federalhealthitstratplanfinal_0.pdf, last visited April 12, 2023.

15. ONC noted in the 2020-2025 plan that the federal government and private sector "have worked together to help digitize health information and healthcare." ONC, Federal Health Information Technology Strategic Plan 2020-2025, available at https://www.healthit.gov/sites/default/files/page/202010/Federal%20Health%20IT%20 Strategic %20Plan_2020_2025.pdf.

16. The CMS's "Meaningful Use" program (now known as the Promoting Interoperability Program, or "PIP"), 42 C.F.R. § 495.2-495.370, aims to increase patients' "meaningful use" and engagement with electronic health records. The program is essential to the federal government's goal.

17. Indeed, the PIP mandates that providers meet specific criteria to receive full Medicare reimbursement, including an interoperable patient portal. Providers receive incentive payments if they can reach a certain level of engagement with electronic health record use through the patient portal.

18. It is suggested that providers implement patient "portals" that allow users to communicate directly with their providers and immediately access (or transfer) their medical records. See, e.g., ONC, Patient Engagement Playbook, available at https://www.healthit.gov/playbook/pe/introduction/ ("Patient portals hold enormous potential to improve patient care and practice workflow.").

19. To best optimize portals, the ONC has stated that they "must be engaging and user-friendly." Furthermore, ONC stated "how a patient portal helps achieve meaningful use requirements" and how a provider can "actively promote and facilitate portal use." ONC, How to Optimize Patient Portals for Patient Engagement available at https://www.healthit.gov/sites/default/fil es/nlc_how_to_optimizepatientportals_for_patientengagement.pdf.

20. CMS maintains its own patient portal for individuals who access care through traditional Medicare—MyMedicare.gov. Similarly, the Department of Veteran Affairs ("VA") maintains its own portal for veterans, My HealtheVet.

21. Leading by example, CMS relies on third-party marketers, including Facebook, to optimize individual engagement with the portal. See generally Medicare.gov, Privacy Policy, available at https://www.medicare.gov/privacy-policy, last visited April 12, 2023. CMS identifies over 20 third parties that it uses for advertising, web analysis, social media outreach, and privacy management in conjunction with Medicare.gov and MyMedicare.gov. *See id.*, Privacy Information Regarding Third-Party Services, available at https://www.medicare.gov/third-party-privacy-policies.

7

22. Notably, this would include many of the same third-party cookies and source code alleged as unlawful in the Complaint. *See id.* See also HHS, Third Party Websites and Applications Privacy Impact Assessment–Facebook Ads (Sept. 4, 2018) available at https://www.hhs.gov/pia/third-party-websites-and-applications-pia-facebook-ads.html, last visited April 12, 2023 (illustrating how CMS engages Facebook to "place[] a cookie or pixel . . . for conversion tracking on certain pages of CMS website. [This] allows Facebook Ads to measure the performance of CMS advertisements based on consumer activity and to report the ad performance to CMS.").

### 1.2. The Defendant here is a "person" as that term is used under 42 U.S.C. § 1442(a)(1).

23. The first element of federal officer removal is to be a "person." *Ruppel*, 701 F.3d 1181.

24. Plaintiffs have named a corporation as the defendant. Corporations are persons, 1 U.S.C. § 1, and the removal statute does not displace that default understanding.

25. In addition, the Hospital can qualify as a person. While the statute is silent as to the definition of a "person", organizations, corporate defendants, and government entities have routinely removed under this provision and been deemed a "person" under the statute. *Teague v. Grand River Dam Auth.*, 279 F. Supp. 703, 704–05 (N.D. Okla. 1968) (public Grand River Dam Authority); *Camacho v. Autoridad de Telefonos de Puerto Rico*, 868 F.2d 482, 486 (1st Cir. 1989) (quasi-public telephone company).[2]

---

[2] Under most circumstances, the Hospital would not meet the statutory definition of a "person," but here, the federal officer statute's broad construction weighs in favor of that interpretation.

### 1.3. The Hospital is acting under a federal officer.

26. For this requirement, "the private person's 'acting under' must involve an effort to *assist*, or to help *carry out*, the federal superior's duties or tasks." *Watson*, 551 U.S. at 152 (emphasis in original); *Ruppel*, 701 F.3d at 1181 (removal appropriate for "defendants working hand-in-hand with the federal government to achieve a task that furthers an end of the federal government"). The Hospital meets this requirement.

27. The Hospital (along with countless other entities) is "helping the government produce" the nationwide, interoperable information technology infrastructure for health information. *See* CMS, Promoting Interoperability Programs, 2020-2025 Strategic Plan (The federal government acknowledging the private sector's role "to help digitize health information and healthcare.").

28. The federal government has also guided the private sector on how best to enhance patient engagement. Furthermore, through its own engagement with third-party services, the federal government has modeled the behavior that private entities are to follow. Here, the Hospital's websites resemble the federal government's example.

29. At least two other federal courts have found that similar providers have satisfied the "acting under" prong on the same basis. *UPMC*, 2020 WL 4381675, at *7 ("UPMC has shown that by its participation in the Meaningful Use Program, it was 'acting under' DHHS when it engaged in the conduct that is at issue in the Complaint. Furthermore, the complained-of conduct is 'for or relating to' an act under color of office, and UPMC has raised several colorable federal defenses."); *ProMedica Health Sys., Inc.*, 2020 WL 7705627, at *2 ("Because Defendant's participation assisted the federal government in achieving that goal [to create a unified system of patient electronic health records], Defendant has satisfied the 'acting under' prong.").

**1.4. Plaintiffs' claims relate to actions under color of federal office.**

30. As set forth above, Plaintiffs' pleading directly challenges the Hospital's alleged website analytics practices and whether it complies with federal law.

31. The pleading also generally targets the Hospital's alleged use of software code and cookies, along with the use of marketing companies in conjunction with its public medical website. Even assuming Plaintiffs' allegations were true, this—as manifested by the government's own use of these third parties—is precisely what the PIP envisions.

32. This infringement on a federal prerogative is precisely the type of case that "relates to" or is "undertaken for" federal office. *UPMC*, 2020 WL 4381675, at *6 ("There is plainly a connection or association between UPMC's website management and marketing strategies and the Meaningful Use program, particularly the incentives that are tied to patient participation and usability."); *ProMedica Health*, 2020 WL 7705627, at *3 ("the claims alleged by Plaintiff implicate Defendant's electronic-health-record patient portal, and Defendant's handling of this electronic information is central to the claims in this case. Defendant alleges the patient portal was created directly in response to PIP.").

**1.5. The Hospital has colorable federal defenses.**

33. The final requirement for removal under this statute erects a low bar and merely requires that the defendant's assertion is both "defensive" and "based in federal law." *Mesa v. California*, 489 U.S. 121, 129-30 (1989); *Jefferson Cnty., Ala. v. Acker*, 527 U.S. 423, 431 (1999) ("We therefore do not require the officer virtually to win his case before he can have it removed" (cleaned up)).

34. The Hospital will assert several colorable federal defenses to the claims at issue.

35. First, the Hospital will argue that it did not violate any duty under HIPAA. Plaintiffs identify the Hospital as a covered entity under HIPAA, and

10

purport that the Hospital violated HIPAA's standard of care. *See* Compl., at ¶¶ 101–114. Furthermore, the Hospital will argue that specific information that is purportedly "disclosed" are outside of the purview of protected health information as defined by HIPAA. This defense turns on an interpretation of federal law and is, therefore, sufficient to satisfy this element.

36. Second, certain state-law privacy standards are preempted under HIPAA. *See* 45 C.F.R. § 160.203. The possibility of preemption is also enough to present a federal defense for removal purposes. *See Ben. Nat'l Bank v. Anderson*, 539 U.S. 1, 7 (2003) (holding that removal is permitted on the basis of preemption). Here, whether or not Indiana's Deceptive Consumer Sales Act and privacy standards are preempted under HIPAA will require the interpretation of a federal statute.

37. Third, the entire nature of the Hospital's involvement in the PIP is "inherently federal in character because the relationship" between the Hospital and HHS "originates from, is governed by, and terminates according to federal law." *Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341, 347 (2001) (holding that state law claims stemming from defendant's representations to a federal agency were preempted). There, the Hospital is entitled to federal judicial review to assess allegations that implicate its relationship with HHS and involvement in the PIP.

38. Fourth and finally, the dormant Commerce Clause "prohibits state laws that unduly restrict interstate commerce." *Tenn. Wine & Spirits Retailers Ass'n v. Thomas*, 139 S.Ct. 2449, 2459 (2019). Accordingly, "a state law that has the 'practical effect' of regulating commerce occurring wholly outside that State's borders is invalid under the Commerce Clause." *Healy v. Beer Inst.*, 491 U.S. 324, 332 (1989). And, "[b]ecause the internet does not recognize geographic boundaries, it is difficult, if not impossible, for a state to regulate internet activities without 'projecting its legislation into other States.'" *Am. Booksellers*

*Found. v. Dean*, 342 F.3d 96, 103 (2d Cir. 2003) *(citing Healy*, 491 U.S. at 334). The Hospital's website provides an easily accessible, interstate (and international) platform by which providers, patients, and others can manage or learn more about their or others' healthcare. Indeed, Plaintiffs here seek a nationwide class. Yet, according to Plaintiffs, Indiana law restricts how the Hospital can design and manage its websites. The Dormant Commerce Clause prohibits Indiana from reaching beyond its borders in that way.

39. These are all colorable federal defenses in this context. *See UPMC*, 2020 WL 4381675, at *6–7 (reciting these four defenses, and holding that they qualify under the removal statute in this context).

## 2. Removal is also proper pursuant to 28 U.S.C. § 1331, federal question jurisdiction.

40. In addition, and in the alternative, removal is proper under federal question jurisdiction.

### 2.1. Removal is appropriate.

41. Removal of this action to federal court is proper under 28 U.S.C. § 1441(a) because Plaintiffs assert claims "arising under" federal law. 28 U.S.C. § 1331.

42. Although Plaintiffs' Complaint only asserts state-law claims, those claims are intertwined with a substantial federal issue. In *Gunn v. Minton*, the Supreme Court set forth the requirements for determining whether federal jurisdiction over a state-law claim exists. 568 U.S. 251, 258 (2013) ("federal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress."). Those requirements are met here.

### 2.2. Federal issues were necessarily raised.

43. The Plaintiffs have necessarily raised a federal issue. *Gunn*, 568 U.S. at 258.

44. As noted, Plaintiffs rely heavily on alleged violations of federal privacy standards. One primary defense will be that the Hospital complied with federal privacy standards. This is a federal issue necessarily raised and disputed.

45. The federal defenses discussed above are likewise federal issues necessarily raised by the subject matter of Plaintiffs' pleading.

### 2.3. The federal issues are actually disputed.

46. The federal issues are actually disputed. *Gunn*, 568 U.S. at 258. Simply put, Plaintiffs have one view of the federal standards they invoke, and the Hospital has a different view. Presumably, Plaintiffs have an opposing view regarding the merits of the federal defenses raised above. Accordingly, the federal issues raised in this case are actually disputed.

### 2.4. The federal issues are substantial.

47. The federal issues are substantial, and important to the federal system as a whole. *Gunn*, 568 U.S. at 258.

48. As set forth above, at the crux of Plaintiffs' claims is that the Hospital failed to comply with standards and regulations set forth by the FTC, HIPAA, and the HHS Bulletin. *See id.* Furthermore, Plaintiffs challenge the techniques and practices that the Hospital has taken in connection with the federal government's effort to build a nationwide health IT infrastructure and expand the use of electronic health records. The federal issue here is also substantial because it will resolve the case and is not merely a trivial aspect of this case.

49. In addition, Plaintiffs' claims and the Hospital's defenses are not merely "significant to the particular parties in the immediate suit"; rather, these issues are "importan[t] … to the federal system as a whole." *Gunn*, 568 U.S. at 260. Resolution of Plaintiffs' claims and the Hospital's defenses will directly impact the federal government's initiative to digitize health records and systems.

Indeed, the fact that district courts have accepted jurisdiction over this genre of case demonstrates the importance of this topic to the federal system as a whole. *Doe I v. UPMC*, 2020 WL 4381675, at *2 (W.D. Pa. July 31, 2020); *Doe v. ProMedica Health Sys., Inc.*, 2020 WL 7705627, at *2 (N.D. Ohio Oct. 30, 2020).

50. Whether Indiana's privacy standards conflict with HIPAA standards, or instructions regarding electronic accessibility promulgated by the federal government, raises an important issue of federal law that should be decided by a federal court. Given the federal prerogatives at stake, federal courts should handle cases with this subject matter.

### 2.5. The federal issues are capable of resolution without disputing the federal-state balance.

51. The federal issues are capable of resolution in this Court. *Gunn*, 568 U.S. at 258. Plaintiffs' allegations of violations of federal standards can be resolved in this Court.

52. The exercise of jurisdiction would not disturb any congressionally approved balance of federal and state judicial responsibilities because the purported standards violated are federal standards. See generally, Compl.

53. Therefore, Plaintiffs' allegations satisfy the prerequisites for removal pursuant to 28 U.S.C. § 1331.

## All Other Removal Requirements are Satisfied

54. The provisions of 28 U.S.C. § 1446(b)(2) requiring consent of codefendants do not apply here, as the Hospital is the sole defendant.

55. Pursuant to 28 U.S.C. § 1446(d), the Hospital will give written notice of the filing of this Notice of Removal to all parties of record in this matter and will file a copy of this Notice with the clerk of the state court. Pursuant to 28 U.S.C. § 1446(a) and Southern District of Indiana Local Civil Rule 81-2, a copy of the operative Complaint is attached hereto as Exhibit 2. A copy of the State Court

Record consisting of the state-court docket and all filings in state court is attached hereto as Exhibit 1.

56. Pursuant to Local Civil Rule 81-2(d), the Hospital states there are no state court motions that remain pending.

57. If there are questions regarding the propriety of removal, the Hospital respectfully requests the opportunity to submit additional briefing or evidence, if needed, as necessary to support removal of this case.

## Conclusion

WHEREFORE, the Hospital removes this action to this Court.

Dated: August 8, 2023                Respectfully submitted

*Matthew T. Albaugh*
Peter S. French, Atty. No. 16716-49
Matthew T. Albaugh, Atty. No. 23293-49
Vivek R. Hadley, Atty No. 36260-53
Taft Stettinius & Hollister LLP
One Indiana Square, Ste. 3500
Indianapolis, IN 46204
(317) 713-3500
(317) 713-3699 (fax)
pfrench@taftlaw.com
malbaugh@taftlaw.com
vhadley@taftlaw.com

*Attorneys for Columbus Regional Hospital, incorrectly named as Southeastern Indiana Health Management Inc d/b/a Columbus Regional Health*

## Certificate of Service

  I hereby certify that on August 8, 2023, I electronically filed the foregoing document using the ECF system, and served the same, via e-mail and U.S. Mail, postage prepaid, upon the following counsel.

 Tyler B. Ewigleben
 Christopher D. Jennings
 Winston Hudson
 Laura Edmondson
 The Johnson Firm
 610 President Clinton Ave., Ste. 300
 Little Rock, AR 72201
 tyler@yourattorney.com
 chris@yourattorney.com
 winston@yourattorney.com
 ledmondson@yourattorney.com

                *Matthew T. Albaugh*
                Matthew T. Albaugh